[No. 15818.  *En Banc.*  August 10, 1920.]

MARY JANE LUBY, *Appellant,* v. INDUSTRIAL INSURANCE COMMISSION, *Respondent.*[1]

MASTER AND SERVANT (20-1)—WORKMEN'S COMPENSATION ACT—RAILROAD EMPLOYEES—STATUTES—CONSTRUCTION. Under Laws of 1917, p. 96, § 19, amending Rem. Code, § 6604-18 by exempting from the operation of the industrial insurance act all employees engaged in maintenance work upon railroads engaged in interstate and intrastate commerce and making no distinction as to whether such work be performed directly or through an independent contractor, a painter employed by an independent contractor painting bridges of a railroad engaged in interstate commerce, is not within the protection of the industrial insurance act, and no award from the insurance fund can be made to his widow upon his death subsequent to the amendment of the act.

Appeal from a judgment of the superior court for Lewis county, Reynolds, J., entered March 16, 1920,

[1]Reported in 191 Pac. 855.

upon sustaining a demurrer to the complaint, dismissing proceedings in review of an order of the industrial insurance commission. Affirmed.

*Geo. T. Reid, J. W. Quick* and *L. B. da Ponte,* for appellant.

*The Attorney General,* for respondent.

*Allen, Winston & Allen,* amici curiae.

FULLERTON, J.—This is an appeal by the plaintiff, Mary Jane Luby, from a judgment entered by the superior court of Lewis county, dismissing her complaint brought in review of an order of the industrial insurance commission. The commission appeared by general demurrer, which the trial court sustained, entering the judgment appealed from, after the plaintiff had elected to stand on her complaint and had refused to plead further. The ultimate question before us therefore is, does the complaint state facts sufficient to constitute a cause of action.

The facts stated in the complaint are, in substance, these: On May 26, 1919, the Director General of Railroads, then operating the lines of the Northern Pacific Railway Company, under the provisions of the Federal statute relating to government control and operation of railroads, entered into a contract with one August Gerske, of Chicago, Illinois, by the terms of which Gerske, for a stated consideration, agreed to clean and paint some twenty-five bridges situated on the line of the railroad of the railway company named within the state of Washington. The contract provided that Gerske should personally superintend the work, that he should furnish all of the labor and materials necessary for carrying it on, should have full control of all the employees engaged upon it, and should be solely responsible for any liability which might arise because

of personal injuries suffered by any of the workmen whom he should employ upon it.

After entering into the contract, Gerske came to the state of Washington for the purpose of entering upon its performance. He brought with him from Chicago a number of experienced bridge painters to perform the labor of painting, among whom was John A. Luby, the husband of the plaintiff. After reaching the state and before entering upon the work, Gerske communicated in writing with the industrial insurance commission, in which he stated to them the nature of his contract and the fact that he was about to commence work thereunder, and inquired whether the work came within the provisions of the workmen's compensation act. He was informed that it did, and thereupon returned to the commission an estimate of his pay roll and paid into the state treasury the percentage thereof required by that act.

Gerske thereupon entered upon the performance of his contract, and while engaged in cleaning and painting a bridge extending over the Chehalis river, in Lewis county, his employee, Luby, fell therefrom, receiving injuries from which he died a short time later. Due proofs of the death and the cause thereof were made to the industrial insurance commission in the manner prescribed by their rules.

The bridge from which Luby fell was a bridge included within the contract of Gerske, and formed at the time of the work a part of the line of railway of the Northern Pacific Railway Company, and was then being used in the operation of trains carrying both interstate and intrastate passengers and freight.

In due time the plaintiff, as the widow of John A. Luby, on behalf of herself and her minor children, filed a claim with the industrial insurance commission

for compensation for the death of her husband, under the provisions of the workmen's compensation act. The claim was rejected for the stated reason that "August Gerske, the employer of John A. Luby, and the men employed by said Gerske, including said John A. Luby, in the work of painting bridges on said line of railroad, were engaged in interstate commerce, and were not, therefore, under the scope and provisions of the workmen's compensation act of the state of Washington."

The trial court rested his decision on the authority of the case of *State v. Bates & Rogers Construction Co.*, 91 Wash. 181, 157 Pac. 482, and the learned counsel representing the plaintiff concedes in his brief that, if the court is to adhere to the principle of that case, it is conclusive against the plaintiff's right of recovery: devoting an argument to a showing that the case was incorrectly determined. But the trial court in its decision does not notice the very radical change in the statute made by the legislature subsequent to the decision of the case cited and prior to the transaction out of which the present controversy arises. This change, we think, presents the vital question in the case, and requires an affirmance of the judgment, regardless of any conclusion that may be reached on the question of the soundness or unsoundness of the cited case.

The section of the industrial insurance act which the court had in review when the decision cited was rendered, is found at § 6604-18 of the Code (Remington's), and reads as follows:

"The provisions of this act shall apply to employers and workmen engaged in intrastate and also in interstate or foreign commerce, for whom a rule of liability or method of compensation has been or may be established by the congress of the United States, only to the extent that their mutual connection with intrastate

work may and shall be clearly separable and distinguishable from interstate or foreign commerce, except that any such employer and any of his workmen working only in this state may, with the approval of the department, and so far as not forbidden by any act of congress, voluntarily accept the provisions of this act by filing written acceptances with the department. Such acceptances, when filed with and approved by the department, shall subject the acceptors irrevocably to the provisions of this act to all intents and purposes as if they had been originally included in its terms. Payment of premium shall be on the basis of the payroll of the workmen who accept as aforesaid.''

The court, in the case cited, construed this statute as exempting from the operation of the act all employers and workmen engaged in interstate or foreign commerce for whom a rule of liability or method of compensation had been established by the Congress of the United States; and held that such a rule of liability had been established by the Congress by the fifth section of the Federal employer's liability act. From this the conclusion was drawn that, since the facts of the case disclosed that the work involved therein was work in repair of a railroad bridge used by a railroad company in the carriage of interstate commerce, the workmen were without the provisions of the act, notwithstanding they were not direct employees of the railroad company, but employees of an independent contractor.

The amendatory statute referred to is found in the act of the legislature of 1917. Laws of 1917, ch. 28, p. 96, § 19. It provides that the section of the statute above cited shall be amended to read as follows:

''Inasmuch as it has proved impossible in the case of employees engaged in maintenance and operation of railways doing interstate, foreign and intrastate commerce, and in maintenance and construction of

their equipment, to separate and distinguish the connection of such employees with interests or foreign commerce from their connection with intrastate commerce, and such employees have, in fact, received no compensation under this act, the provisions of this act shall not apply to work performed in the maintenance and operation of such railroads or performed in the maintenance or construction of their equipment, or to the employees engaged therein, but nothing herein shall be construed as excluding from the operation of this act railroad construction work, or the employees engaged thereon: Provided, however, That common carriers by railroad engaged in such interstate or foreign commerce and in intrastate commerce shall, in all cases where liability does not exist under the laws of the United States, be liable in damages to any person suffering injury while employed by such carrier, or in case of the death of such employee to his surviving wife and child, or children, and if no surviving wife or child or children, then to the parents, sisters, or minor brothers, residents of the United States at the time of such death and who were dependent upon such deceased for support, to the same extent and subject to the same limitations as the liability now existing, or hereafter created, by the laws of the United States governing recoveries by railroad employees injured while engaged in interstate commerce.''

This section, it will be observed, especially and in direct terms provides that the provisions of the industrial insurance act shall not apply to work performed in the maintenance of railroads engaged in interstate, foreign and intrastate commerce, nor to employees in such work. It makes no distinction with regard to the manner in which the railroad company performs the work; that is, whether it performs the work directly by employees hired and paid by it, or whether it performs the work through an independent contractor who undertakes the work for a stated consideration with the understanding and agreement that he is to employ and

pay for the necessary laborers—in either event, the employees are without the provisions of the act. In other words, it is the character of the work that excludes, not the method by which the work may be performed.

The facts in the record show that the unfortunate workman for whose death compensation is claimed was, at the time of his death, employed in maintenance work upon a railroad engaged at the time in interstate, foreign and intrastate commerce. This is not only the necessary conclusion from the recitals of the facts contained in the complaint, but it is also made a direct and positive allegation thereof. They show further that he was employed, and his death occurred, after the enactment of the statute of 1917. The plaintiff's rights, therefore, must depend upon that statute, and cannot be affected in any manner by the construction this court may have given to the former one which it supersedes. The question, therefore, whether the cited case was correctly or incorrectly decided is moot, in so far as the present controversy is concerned, and no useful purpose would be subserved by entering upon such an inquiry.

The appellant's counsel, as well as the *Attorney General,* appreciating the difference in the statutes, calls attention to the fact that the exclusion of railway employees from the benefits of the provisions of the industrial insurance act will result in relegating them in many instances to a common law action to recover for injuries received by them in which the common law defenses will be applicable on the part of employers, and argues that a better construction of the statute than the one we have indicated would be to hold that the exemption applies only in those instances where the workman is in the immediate

employment of the railroad company, and not in instances where he is the employee of an independent contractor. But, while we appreciate the humane side of the argument, it is not our opinion that the statute is of doubtful meaning, and thus open to interpretation. We cannot read it otherwise than that the legislature has thereby exempted from the operation of the industrial insurance act all employees engaged in maintenance work upon railroads engaged in interstate and intrastate commerce, without regard to the fact whether they are employed to perform the work by the railway company itself or by an independent contractor. For the court, therefore, to read into the statute such an exception would be to legislate and not to construe.

The judgment is affirmed.

ALL CONCUR.